## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| VINCENT PAUL OSUNA, | |
| Plaintiff, | CIVIL ACTION   1:15-cv-10231 |
| v. | COMPLAINT |
| SETERUS, INC., BANK OF AMERICA, N.A., EQUIFAX INFORMATION SERVICES, LLC, and EXPERIAN INFORMATION SOLUTIONS, INC | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

NOW COMES the Plaintiff, VINCENT PAUL OSUNA ("Plaintiff"), by and through his attorneys, SULAIMAN LAW GROUP, Ltd., complaining of the Defendants, SETERUS, INC., ("Seterus"), BANK OF AMERICA, N.A. ("BOA"), EQUIFAX INFORMATION SERVICES, LLC ("Equifax") and EXPERIAN INFORMATION SERVICES, LLC ("Experian") (collectively, "Defendants") as follows:

### NATURE OF THE ACTION

1.  Plaintiff brings this action for violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681.

### JURISDICTION AND VENUE

2.  Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and Defendants' conduct harmed Plaintiff in this District.

1

## PARTIES

4.   Plaintiff is a consumer and natural person over 18-years-of-age who, at all times relevant, owned and resided at the property located at 6112 South Major, Chicago, Illinois 60638 ("subject property").

5.   Defendant Seterus is a Delaware corporation with its principal place of business located at 14523 SW Millikan Way, Beaverton, Oregon 97005. Seterus is a foreign company in the business of servicing loans and collecting debts across the country, including the state of Illinois. Seterus is a furnisher of information to the major credit reporting agencies, including Equifax and Experian ("CRAs").

6.   Defendant BOA is a Delaware corporation with its principal place of business at Bank of America Corporate Center, 100 N. Tyron Street, Charlotte, North Carolina. BOA is a National Banking Association that does business all over the United States, including the State of Illinois. BOA is a furnisher of information to the major credit reporting agencies, including Equifax.

7.   Defendant Equifax is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. Equifax is in the business of compiling and maintaining consumer files for the purpose of furnishing credit information about consumers to third parties on a nationwide basis, including in the State of Illinois.

8.   Defendant Experian is a corporation incorporated in the state of Ohio and is authorized to do business in the State of Illinois. Experian is in the business of compiling and maintaining files on consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

**BANKRUPTCY CASE**

9.   On April 19, 2006, Plaintiff executed a mortgage and note in the amount of $229,000.00 in favor of Mortgage Enterprises, Inc., secured by the subject property. On August 28, 2006, Mortgage Enterprises, Inc., executed an Assignment of Mortgage to Bank of America, N.A. ("BOA").

10. At some point between August 26, 2006, and October 25, 2011, Seterus acquired servicing rights to the first mortgage ("subject debt #1" or "subject debt #1").

11. On November 1, 2006, Plaintiff executed a second mortgage in the amount of $22,781.00 ("subject debt #2" or "subject loan #2")(collectively "subject debts" or "subject loans") in favor of BOA, secured by the subject property.

12. On October 30, 2014, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 14-39446 ("bankruptcy").

13.  Schedule D of the bankruptcy petition listed the subject loan #1, a secured pre-petition debt to Seterus, in the amount of $223,290.00, secured by the subject property. *See* Exhibit A, a true and correct copy of Schedule D-F filed in Plaintiff's bankruptcy case.

14. Schedule D of the bankruptcy petition listed the subject loan #2, a secured pre-petition debt to BOA, in the amount of $22,781.00, secured by the subject property. *See* Exhibit A.

15. Schedule F of the bankruptcy petition listed Equifax and Experian for notice purposes. *See* Exhibit A.

16. On October 31, 2014, because Plaintiff listed Seterus and BOA as creditors, the Bankruptcy Noticing Center ("BNC") served Defendants with notice of Plaintiff's bankruptcy filing and Plaintiff's Original Plan. *See* Exhibit B, a true and correct copy of the BNC Certificate of Notice establishing service of the notice of filing and Original Plan on the Defendants.

3

17. Plaintiff's Original Plan proposed to treat BOA and Seterus's claim as follows:

> "Debtor is surrendering the real property located at 6112 South Major, Chicago, Illinois 60638 to Seterus, Inc. and Bank of America, N.A., in full satisfaction of their claims." *Id*. at p. 5.

18. On December 4, 2014, the 341 Meeting of Creditors was held with the Chapter 13 Trustee.

19. On February 25, 2015, Plaintiff's Chapter 13 Plan was confirmed by the Honorable Jack B. Schmetterer. *See* Exhibit C, a true and correct copy of the Confirmation Order.

20. On March 2, 2015, Seterus, through its counsel, Johnson Blumberg & Associates, LLC filed an Entry of Appearance in Plaintiff's bankruptcy case. *See* Exhibit D, a true and correct copy of Seterus's Entry of Appearance filed in Plaintiff's bankruptcy.

21. On May 5, 2015, Seterus, through its counsel, presented its Motion for Relief from Stay in Plaintiff's bankruptcy, which acknowledged Plaintiff's intent to surrender the subject property. *See* Exhibit E, a true and correct copy of Seterus's Motion for Relief from Automatic Stay filed in Plaintiff's bankruptcy case.

22. On May 13, 2015, the Bankruptcy Court granted Seterus's Motion for Relief From Automatic Stay to proceed with foreclosure on the subject property. *See* Exhibit F, a true and correct copy of the Order Granting Seterus Relief from the Automatic Stay.

23. Plaintiff fully performed his duties as set forth in his confirmed Chapter 13 Plan.

24. On September 1, 2015, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the subject loans. *See* Exhibit G, a true and correct copy of the Order of Discharge and BNC Certificate of Notice establishing service of the Order of Discharge upon Defendants.

25. The Order of Discharge expressly states:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor...." *Id.* at p. 2.

26. On September 3, 2015, the BNC served Defendants with the Order of Discharge. *Id.* at p. 3.

27. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject loans by Seterus, BOA, or any other party.

28. Plaintiff's personal liability on the subject loans was extinguished via his bankruptcy discharge, thus terminating the business relationship with Seterus, BOA, and any of their successors and assigns.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTE TO EQUIFAX

29. In early September 2015, after receiving his discharge, Plaintiff pulled his Equifax credit report.

30. Plaintiff's Equifax report revealed that Seterus and BOA were reporting the subject loans as in default, with a high balance, and a negative payment history. The reporting was inaccurate because the subject loans were discharged in his bankruptcy on September 1, 2015, and should be reported with a zero balance, without any negative payment history or other derogatory status.[1]

---

[1] To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA") publishes standard guidelines for reporting data called the "Metro 2 Format."

5

### a. Plaintiff's Dispute Letter to Equifax[2]

31. On September 29, 2015, Plaintiff sent a written credit dispute letter to Equifax, requesting that his credit file be updated to reflect the zero balance and discharged status of all accounts discharged in his Chapter 13 bankruptcy. Plaintiff also specifically disputed the BOA and Seterus trade lines: **Account #XXXX9413 and Account #XXXX0063**. Plaintiff attached all relevant and supporting bankruptcy documents to his dispute. *See* Exhibit H, a true and correct copy of Plaintiff's September 29, 2015 first dispute letter to Equifax.

32. Among other things, Plaintiff's first dispute letter stated the following:

    a. "I am enclosing a copy of the Order Discharging Debtor entered on 09/1/2015;"
    b. "Please update the subject credit file(s) to reflect the discharged status of the debts;"
    c. "Consequently, I am requesting you to immediately activate the Automated Dispute Resolution System program with respect to this written notice, regarding each creditor listed on the attached Schedules D, E, and F;"
    d. "Specifically, I am requesting an investigation into the following accounts: **Bank of America, account # XXXX9413 and Seterus, account # XXXX0063**;[3]"
    e. "These accounts were discharged in my bankruptcy Case No. 14-39446. The account status should be marked as 'discharged' and there should be no derogatory reporting after the filing date;"
    f. "The balance, the past due and the scheduled payment amounts on these accounts should be '$0' after the bankruptcy filing date. Please make the appropriate changes to this entry immediately;"
    g. "In addition, it is my understanding that each of the above creditors is required to investigate my disputes upon receipt of notification from you of this information;" and
    h. "I request that you forward this letter, and the enclosures, to each the creditors listed above." *Id.*

---

[2] Plaintiff also sent dispute letters to TransUnion LLC. On October 7, 2015, TransUnion updated the BOA and Seterus account trade lines associated with the subject loans and the subject property, following its investigation into Plaintiff's dispute letter. Upon information and belief, TransUnion updated the BOA and Seterus account trade lines because their investigation revealed that the information provided by BOA and Seterus was inaccurate.

[3] Plaintiff's dispute letter also specifically disputed Chase, account #XXXX6836. This trade line was subsequently updated by Equifax from the Plaintiff's credit files pursuant to the FCRA.

33. Plaintiff sent his dispute letter to Equifax via certified mail, return-receipt requested. *Id.*

34. Upon information and belief, BOA and Seterus received notice of Plaintiff's credit dispute and enclosures from Equifax within five days of Equifax receiving Plaintiff's first dispute letter. *See* 15 U.S. Code §1681i(a)(2).

### b. Equifax's Response to Plaintiff's Dispute Letter

35. On October 21, 2015, Equifax responded to Plaintiff's dispute letter by correcting some of the accounts included in his bankruptcy, but not the BOA and Seterus accounts. *See* Exhibit I, a true and correct copy of the results of Plaintiff's dispute letter from Equifax.

36. Equifax's response stated:

> >>> **We have researched the credit account** [subject debt #1] **Account #− 659000594\* The results are:** The balance of this item has been updated. *Additional information has been provided from the original source [Seterus] regarding this item.* Historical account information was deleted from this account. If you have additional questions about this item please contact: **Seterus Inc, 8501 IBM Dr Bldg 201, Services, Inc, Charlotte NC 28262-4333 Phone: (503) 372-8142.** (emphasis added).

> >>> **We have researched the credit account** [subject debt #2] **Account #− 87493\* The results are:** This creditor is currently reporting a zero balance for this account. If you have additional questions about this item please contact: **Bank of America, 1800 Tapo Canyon, Ca6 914 01 91, Simi Valley CA 93063 Phone: (800) 451-6362**

37. Despite Seterus and Equifax's representation that Plaintiff's balance had been updated, the trade line for subject debt #1 (**Account #− 659000594\***) was still reporting a "Balance Amount" of $223,007.00, an "Amount Past Due" of $17,897.00, and a "Scheduled Payment Amount" of $1,491.00. *Id.* at p. 2.

38. The reporting of the Seterus trade line is inaccurate because the Plaintiff is no longer liable for subject debt #1. Reporting a "Balance Amount," an "Amount Past Due," and a "Scheduled Payment Amount" falsely implies that Plaintiff is delinquent and is still liable on the subject loan.

7

39. Despite BOA and Equifax's representation that Plaintiff's credit report had been updated to reflect a zero balance, the account status for subject debt #2 (**Account #− 87493**\*) was still reporting the trade line as "Over 120 Days Past Due." *Id.* at p. 2.

40. The reporting of the BOA trade line is inaccurate because the Plaintiff is no longer liable for subject debt #2. Reporting a status of "Over 120 Days Past Due" falsely implies that Plaintiff is delinquent and is still liable on the subject loan.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTE TO EXPERIAN

#### a. Plaintiff's Dispute Letter to Experian

41. On September 29, 2015, Plaintiff sent a written credit dispute letter to Experian, requesting that his credit file be updated to reflect the zero balance and discharged status of all accounts discharged in his Chapter 13 bankruptcy. Plaintiff also specifically disputed the BOA and Seterus trade lines: **Account #XXXX9413 and Account #XXXX0063**. Plaintiff attached all relevant bankruptcy documents to his dispute. *See* Exhibit J, a true and correct copy of Plaintiff's September 29, 2015 dispute letter to Experian.

42. Among other things, Plaintiff's dispute letter to Experian stated the following:

   a. "I am enclosing a copy of the Order Discharging Debtor entered on 09/1/2015;"
   b. "Please update the subject credit file(s) to reflect the discharged status of the debts;"
   c. "Consequently, I am requesting you to immediately activate the Automated Dispute Resolution System program with respect to this written notice, regarding each creditor listed on the attached Schedules D, E, and F;"
   d. "Specifically, I am requesting an investigation into the following accounts: **Bank of America, account # XXXX9413 and Seterus, account # XXXX0063**;"[4]
   e. "These accounts were discharged in my bankruptcy Case No. 14-39446. The account status should be marked as 'discharged' and there should be no derogatory reporting after the filing date;"

---

[4] Plaintiff's dispute letter to Experian also specifically disputed Chase, account #XXXX6836. This trade line was subsequently updated by Experian from the Plaintiff's credit files pursuant to the FCRA.

f. "The balance, the past due and the scheduled payment amounts on these accounts should be '$0' after the bankruptcy filing date. Please make the appropriate changes to this entry immediately;"

g. "The last activity date on this account should be no greater than the bankruptcy filing date shown above. However, this account is showing derogatory entries made after the date of my bankruptcy filing. These entries are improperly reducing my credit score;"

h. "In addition, it is my understanding that each of the above creditors is required to investigate my disputes upon receipt of notification from you of this information;" and

i. "I request that you forward this letter, and the enclosures, to each the creditors listed above." *Id.*

43. Plaintiff sent his dispute letter to Experian via certified mail, return-receipt requested. *Id.*

44. Upon information and belief, BOA and Seterus received notice of Plaintiff's credit dispute and enclosures from Equifax within five days of Equifax receiving Plaintiff's first dispute letter. *See* 15 U.S. Code §1681i(a)(2).

**b. Experian's Response to Plaintiff's Dispute Letter**

45. On October 13, 2015, Experian responded to Plaintiff's dispute letter stating that it had updated the trade line and the balances for the Seterus and BOA accounts. *See* Exhibit K, a true and correct copy of the pertinent parts of the results of Plaintiff's dispute letter to Experian.[5]

46. Despite its representation that the Seterus account was listed as discharged through Bankruptcy Chapter 13, Seterus and Experian were still reporting subject loan #1 with an "Account Balance" and a "Scheduled Payment Amount" from the date of Plaintiff's bankruptcy filing in October, 2014 through June of 2015 in Plaintiff's "Account History." *Id.* at p.5.

---

[5] BOA corrected its trade line to accurately reflect Plaintiff's bankruptcy filing and post-bankruptcy "Payment History" and "Account History." *See* Exhibit K, p. 7.

47. Moreover, in Plaintiff's "Payment History," Seterus and Experian were still reporting post-bankruptcy activity from the date of Plaintiff's bankruptcy filing in October 2014 through July 2015.[6]

48. Particularly, the "Payment History" and "Account Status" guidelines are the same, meaning that the "Payment History" and "Account Status" should be reported the same way both during and after the bankruptcy proceeding.[7]

49. The reporting of the Seterus trade line was inaccurate and misleading because Seterus continued reporting information based on Seterus's pre-bankruptcy contract terms with the Plaintiff, which were no longer enforceable upon the bankruptcy filing.

50. The adverse information reported by Seterus and Experian was based on Seterus's improper enforcement of pre-bankruptcy obligations. This enforcement was inaccurate, since after filing Chapter 13 Bankruptcy the Plaintiff's proposed and eventually confirmed Chapter 13 Plan determined how Seterus would be paid. Failing to report consistent with the terms of the Chapter 13 plan is inaccurate.

51. Additionally, Seterus failed to comply with the Consumer Data Industry Association's Metro 2 reporting standards.

---

[6] The Metro 2 Format guidelines for credit reporting are nearly identical for reports made during the "Months between petition filed and Bankruptcy resolution" and after "Plan Completed" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs. *See* CDIA Credit Reporting Resource Guide, page 6-20,21.

[7] The guidelines direct furnishers to report an account status as it existed at the time the bankruptcy petition was filed and not the account status as it *would have* existed in the months following the filing of the petition if the petition had not been filed. *Id.*

## IMPACT OF CONTINUING
## INCORRECT REPORTING ON PLAINTIFF'S CREDIT FILE

52. As of today, the erroneous reporting of the Seterus and BOA accounts continues to paint a false and damaging picture of Plaintiff. Equifax has yet to update the Seterus and BOA accounts to accurately reflect the zero balances and discharged status of the subject loans. Experian has yet to update the Seterus trade line to accurately reflect Plaintiff's bankruptcy petition and subsequent discharge.

53. The entire experience has engendered within Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff hopeless as to his ability to regain his good name and the credit rating that he deserves and has worked hard to earn by completing his Chapter 13 Plan.

54. The inaccurate reporting of subject loans continues to have significant adverse effects on Plaintiff's credit rating and his ability to obtain financing because it creates a false impression that the Seterus and BOA accounts are delinquent, rendering Plaintiff a high risk consumer.

55. As a result of the conduct, actions, and inaction of the Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his dispute, monitoring his credit file, and mental and emotional pain and suffering.

56. Moreover, Plaintiff has been denied credit on numerous occasions as a result of Defendants' erroneous and inaccurate credit reporting.

57. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to resolve the erroneous credit reporting of the Seterus and BOA trade lines.

## COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (AGAINST SETERUS)

58. Plaintiff restates and realleges paragraphs 1 through 56 as though fully set forth herein.

59. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

60. Seterus is a "person" as defined by 15 U.S.C. §1681a(b).

61. Seterus is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

62. Seterus violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving notice and requests for an investigation from Equifax, Experian and Plaintiff.

63. Seterus violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Plaintiff, Equifax and Experian.

64. Had Seterus reviewed the information provided by Plaintiff, Equifax, and Experian it would have corrected the inaccurate designation of the subject loan to Equifax and Experian. Instead, Seterus wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation in violation of 15 U.S.C. §1681s-2(b)(1)(C).

65. Seterus violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's file. Instead, Seterus continued to report the inaccurate information on Plaintiff's credit report.

66. Seterus violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's disputes with Equifax and Experian, thereby causing continued reporting of inaccurate information on Plaintiff's credit report.

67. Seterus violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Equifax and Experian after being put on notice and discovering inaccurate reporting with respect to the subject loan.

68. Seterus failed to conduct a reasonable reinvestigation of its reporting of the subject loan, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from Equifax and Experian under 15 U.S.C. §1681i(a)(1).

69. Seterus violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

70. Despite the blatantly obvious errors on Plaintiff's credit file, and Plaintiff's efforts to correct the errors, Seterus did not correct the errors or trade line to report accurately after recieving notice of a dispute from Equifax and Experian. Instead, Seterus wrongfully furnished and re-furnished false and erroneous information that the subject loan was delinquent by willfully reporting the inaccurate trade line after Plaintiff's disputes.

71. A reasonable investigation by Seterus would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported on Plaintiff's credit files as of today.

72. Had Seterus taken steps to investigate Plaintiff's valid disputes or Equifax and Experian's requests for investigation, it would have permanently corrected the erroneous and misleading credit reporting. Plaintiff provided all relevant information in his requests for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily accessible.

73. By deviating from the standards established by the mortgage servicing industry, the Consumer Data Industry Association and the FCRA, Seterus acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax and Experian.

WHEREFORE, Plaintiff VINCENT PAUL OSUNA requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT II - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (AGAINST BANK OF AMERICA)

74. Plaintiff restates and realleges paragraphs 1 through 56 as though fully set forth herein.

75. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

76. BOA is a "person" as defined by 15 U.S.C. §1681a(b).

77. BOA is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

78. BOA violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving notice and requests for an investigation from Equifax and Plaintiff.

79. BOA violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Plaintiff and Equifax.

80. Had BOA reviewed the information provided by Plaintiff and Equifax, it would have corrected the inaccurate designation of the subject loan to Equifax. Instead, BOA wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation in violation of 15 U.S.C. §1681s-2(b)(1)(C).

81. BOA violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's file. Instead, BOA continued to report the inaccurate information on Plaintiff's credit report.

82. BOA violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's disputes with Equifax, thereby causing continued reporting of inaccurate information on Plaintiff's credit report.

83. BOA violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Equifax after being put on notice and discovering inaccurate reporting with respect to the subject loans.

84. BOA failed to conduct a reasonable reinvestigation of its reporting of the subject loans, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from Equifax under 15 U.S.C. §1681i(a)(1).

85. BOA violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

86. Despite the blatantly obvious errors on Plaintiff's credit file, and Plaintiff's efforts to correct the errors, BOA did not correct the errors or trade line to report accurately after receiving notice of Plaintiff's dispute from Equifax. Instead, BOA wrongfully furnished false and

erroneous information that the subject loan was delinquent by willfully reporting the inaccurate trade line after Plaintiff's disputes.

87. A reasonable investigation by BOA would have confirmed the veracity of Plaintiff's dispute, yet the inaccurate information continues to be reported on Plaintiff's credit files as of today.

88. Had BOA taken steps to investigate Plaintiff's valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous and misleading credit reporting. Plaintiff provided all relevant information in his requests for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily accessible.

89. By deviating from the standards established by the mortgage servicing industry, the Consumer Data Industry Association and the FCRA, BOA acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

WHEREFORE, Plaintiff VINCENT PAUL OSUNA requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f.   Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g.   Award any other relief as this Honorable Court deems just and appropriate.

COUNT III - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(AGAINST EQUIFAX)

90. Plaintiff restates and realleges paragraphs 1 through 56 as though fully set forth herein.

91. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

92. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

93. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

94. Plaintiff provided Equifax with all relevant information and documentation in his requests for investigation to reflect the discharged status of the subject loans.

95. Equifax prepared Plaintiff's credit reports containing inaccurate information by reporting and re-reporting the subject loans with high balances, high past due amounts, and scheduled payment amounts, when in fact he had received a bankruptcy discharge and owed no balances, was not past due, and was not obligated to make a monthly payment in relation to the subject loans.

96. A simple review of the documents submitted by Plaintiff would have confirmed that Plaintiff had received a discharge and no longer owed any balances, and no longer had an obligation to make monthly payments to Seterus and BOA.

97. Had Equifax taken *any* steps to investigate Plaintiff's valid dispute, it would have determined that the subject loans were discharged in Plaintiff's bankruptcy.

98. Instead, Equifax sent Plaintiff correspondences stating that it had updated its records to reflect Plaintiff's bankruptcy discharge, at the same time that it willfully continued to report and re-report the inaccurate information.

99. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished regarding the Plaintiff.

100. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the erroneous information on Plaintiff's credit file.

101. Equifax violated 15 U.S.C. §1681i(a)(2) by failing to record all relevant information that it received from Plaintiff, Seterus and BOA with regard to Plaintiff's credit report and the subject loans.

102. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff, Seterus and BOA with regard to the subject loans.

103. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's dispute.

104. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Seterus and BOA that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff. The lack of notice and correction caused Plaintiff to pull his credit multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Plaintiff's credit worthiness and credit score.

105.  Since *all* of Plaintiff's other accounts were reported as "$0 balances owed," "included in bankruptcy," or "discharged," Equifax should have investigated why the Seterus and BOA trade lines, and only the Seterus and BOA trade lines, still reported as  "owing," "due" and "a scheduled payment amount."

106.  Moreover, after Plaintiff's written disputes, Equifax had specific information related to Plaintiff's bankruptcy case and discharge order, which included the subject loans.

107.  Equifax knew that the inaccurate designation of the subject loans on Plaintiff's credit report under the Seterus and BOA trade lines as in default, and with a high balance owed after his bankruptcy discharge would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after bankruptcy.

108.  The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

109.  By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with reckless disregard for its duties to report accurate and complete consumer credit information.

110.  It is Equifax's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

111.  Equifax's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful and wanton nature of its conduct in maintaining Plaintiff's credit files and reporting and re-reporting Plaintiff's credit information.

112.  Equifax acted reprehensibly by reporting the Seterus and BOA accounts as delinquent, in default, and owing a high balance.

113. As a result of the conduct, actions, and inaction of Equifax, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit file, and the mental and emotional pain and suffering, anguish, humiliation, and embarrassment of constant credit denials.

114. Equifax's conduct was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, Plaintiff VINCENT PAUL OSUNA requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion of all adverse credit reporting;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT IV - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(AGAINST EXPERIAN)

115. Plaintiff restates and realleges paragraphs 1 through 56 as though fully set forth herein.

116. Experian is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

117. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

118. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

119. Plaintiff provided Experian with all relevant information and documentation in his requests for investigation to reflect his Confirmed Chapter 13 plan and subsequent discharged status of subject loan #1.

120. Experian prepared Plaintiff's credit reports containing inaccurate information by reporting the Seterus trade line with post-bankruptcy derogatory information, when in fact his Chapter 13 plan was confirmed and he received a bankruptcy discharge and owed no balance, and was not past due or obligated to make a monthly payment in relation to the subject loan.

121. A simple review of the documents submitted by Plaintiff would have confirmed that Plaintiff's Chapter 13 plan was confirmed and he received a discharge and no longer owed any obligation to Seterus post-bankruptcy filing.

122. Had Experian taken *any* steps to investigate Plaintiff's valid dispute, it would have determined that subject loan #1 was confirmed and discharged in his bankruptcy.

123. Instead, Experian sent Plaintiff a correspondence stating that it had updated its records to reflect Plaintiff's bankruptcy discharge, at the same time that it willfully continued to report the post-bankruptcy inaccurate information.

124. Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished regarding the Plaintiff.

125. Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the erroneous information on Plaintiff's credit file.

126. Experian violated 15 U.S.C. §1681i(a)(2) by failing to record all relevant information that it received from Seterus and Plaintiff with regard to Plaintiff's consumer report and the subject loan.

127. Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and Seterus with regard to the subject loan.

128. Experian violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's dispute.

129. Experian violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Seterus that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff. The lack of notice and correction caused Plaintiff to pull his credit multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Plaintiff's credit worthiness and credit score.

130. Moreover, after Plaintiff's written dispute, Experian had specific information related to Plaintiff's bankruptcy case and discharge order, which included the subject loan.

131. Experian knew that the inaccurate designation of the subject loan on Plaintiff's consumer reports under the Seterus trade line would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after bankruptcy.

132. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

133. By deviating from the standards established by the credit reporting industry and the FCRA, Experian acted with reckless disregard for its duties to report accurate and complete consumer credit information.

134. It is Experian's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

135. Experian's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting Plaintiff's credit information.

136. As a result of the conduct, actions, and inaction of Experian, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit file, and the mental and emotional pain and suffering, anguish, humiliation, and embarrassment of constant credit denials.

137. Experian's conduct was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, Plaintiff VINCENT PAUL OSUNA requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion of all adverse credit reporting;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: November 11, 2015                 Respectfully Submitted,

                                         /s/ Matthew H. Hector

                                         Matthew H. Hector ARDC#6283058
                                         *Counsel for Plaintiff*
                                         Sulaiman Law Group, LTD
                                         900 Jorie Blvd, Ste 150
                                         Oak Brook, IL 60523
                                         Phone (630)575-8181
                                         mhector@sulaimanlaw.com